UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                    :    Chapter 13

PAMELA SCOTT-GAGE                        :

            Debtor                       :    Bankruptcy No. 05-10069F

..................................................

MEMORANDUM

..................................................

Before me is the request of the above-captioned chapter 13 debtor to

confirm an amended chapter 13 plan.  Two objections to confirmation have been filed.

One was submitted by a secured creditor: JP Morgan Chase Bank.  The standing chapter

13 trustee has raised the other objection.   The secured creditor contends that the debtor's

proposed plan is not feasible; the plan also purportedly violates the best interest of

creditors test.  The trustee maintains that the proposed plan does not meet the disposable

income test.

An evidentiary hearing was held and the following facts were established.

I.

A.

On January 3, 2005, the debtor filed a voluntary bankruptcy petition under

chapter 13.  This was her second effort at a bankruptcy reorganization, having

unsuccessfully sought chapter 13 relief in February 2001.  Bankr. No. 01-11526.  That

earlier case was dismissed on July 23, 2002, upon motion of the trustee, due to the debtor's failure to tender plan payments.[1]

On her bankruptcy schedules in this second case, filed on January 18, 2005, the debtor disclosed her ownership of real property located at 3 Linden Terrace, Philadelphia, Pennsylvania. She valued this realty at $60,000, and listed JP Morgan Chase as holding a mortgage in the amount of $53,426. Ex. M-4. She further revealed unsecured creditor claims totaling $26,125.56, of which $9,666.58 was disputed. Id.

These schedules also included information regarding the debtor's income and expenses. She disclosed that she was an executive account manager earning gross income of $2,600 per month, while her non-debtor spouse, Mr. Daniel King, was a housekeeper earning monthly gross income of $686. Combined, the debtor and her husband had monthly net income of $2,583.52, with the only deductions from wages being witholding taxes. Id. Their combined expenses, including monthly mortgage payments and a student loan payment, totaled $2,536.59. This left only $46.93 in excess monthly income. Id. The debtor's income schedule stated that she expected her monthly gross income to be reduced to $2,000 because she was enrolling as a student and would be employed part-time. Id.

---

[1]I take judicial notice, under Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017), of the docket entries of that case and of the present case. See Maritime Electric Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n.19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

The docket entries in this case reflect that on January 18, 2005, the debtor filed a proposed chapter 13 plan. She testified that under this plan she would pay $40 per month to the chapter 13 trustee for 38 months.

JP Morgan Chase filed a secured proof of claim dated January 20, 2005, asserting an indebtedness totaling $54,674.43 and a prepetition mortgage arrearage of $6,293.79. The Linden Terrace realty is listed as the collateral. Ex. M-1. Included in the pre-bankruptcy mortgage arrearage are nine delinquent monthly payments. Id.

Obviously, payments of $40 for 38 months, totaling $1,520, would neither repay the mortgagee in full nor cure the prepetition mortgage delinquency. Thus, on February 2, 2005, JP Morgan Chase filed an objection to the debtor's proposed chapter 13 plan.

On March 22, 2005, the debtor commenced an adversary proceeding against JP Morgan Chase (and others) asserting, inter alia, that this secured loan should be rescinded due to material violations of the federal Truth-in-Lending Act, 15 U.S.C. §§ 1601, et seq. That adversary proceeding is docketed at Adv. No. 05-0171. A primary issue posed by the debtor's TILA rescission claim against JP Morgan Chase is her allegation that she never received a copy of the requisite loan disclosure documents at the time of the mortgage loan. If true, this would be a material violation of TILA, given that the plaintiff's home served as collateral for the loan. See, e.g., Beach v. Ocwen Federal Bank, 523 U.S. 410 (1998).

In that adversary proceeding, JP Morgan Chase denies that the debtor did not receive copies of all required documents at the loan closing, and produced a copy of a document signed by the debtor at the closing in which she acknowledged receipt of all

3

documents.  By virtue of 15 U.S.C. § 1635(c) "written acknowledgment of receipt of any

disclosures required under this subchapter by a person to whom information, forms, and a

statement is required to be given pursuant to this section does no more than create a

rebuttable presumption of delivery thereof."  Thus, the acknowledgment signed by the

debtor is not conclusive on this issue, but shifts the evidentiary burden to her to rebut the

presumption of receipt.  The debtor proposes to meet her burden via testimony in the

adversary proceeding that she first received copies of the requisite documents by mail,

days after the loan closing.

   That adversary proceeding is still pending.  I am awaiting a ruling by the

Third Circuit Court of Appeals in another case, Strang v. Wells Fargo, Docket No. 05-

5154, which raises the issue whether a borrower's testimony by itself is sufficient to rebut

the presumption of receipt.  At least two decisions from courts in the Eastern District of

Pennsylvania have held to the contrary.

   On May 17, 2005, the debtor filed amended schedules of income and

expenses.  Exs. M-2 and M-3.  In these schedules, the debtor reports no monthly income

at all, except a $200 "contribution from daughter Nashe Scott."  Ex. M-2.  Her husband's

monthly income as a housekeeper has increased to $1,800, with net income of $1,438.46.

Id.  Her monthly expenses have decreased to $1,593.59, due to the elimination of student

loan payments, elimination of cable tv expense, reduction in water and sewer charges, and

reduction in food, clothing, laundry, medical, transportation, recreation, insurance and

charitable expenses.   Her excess income over expenses is reported to be $44.87.  Ex. M-

3.

4

On March 28, 2006, the debtor filed an amended plan, the confirmation of which JP Morgan Chase objected to.  On April 25, 2006, the debtor filed an "addendum" to her amended plan, and the chapter 13 trustee objected.  (These plan provisions, Exs. D-1 and D-2 will be detailed below.)  On May 9, 2006, she filed second amendments to her current monthly income and expenses schedules.  Exs. D-3 and D-4.  Therein, she reported work-study income for herself of $530, support payments of $700 and a contribution of $200 from her daughter, totaling net income of $1,400.  Ex. D-3.  Her husband's income is not included, presumably due to the alleged support contribution.  Her expenses are again adjusted and decreased to $1,350.59 per month, leaving $49.41 in disposable income to fund a chapter 13 plan.  Ex. D-3.

On June 2, 2006, the debtor filed her third amended schedules of monthly income and expenses.  Exs. D-5 and D-6.  Although she had not yet received her first paycheck, the debtor reported employment at Dochara Industrial Enterprises as a junior architectual designer, earning $1,667 per month, or $20,000 per annum.  Exs. D-5; D-7.  From this salary she disclosed monthly net income of $1,367, plus support from Mr. King in the amount of $500 (down from $700 reported earlier).  Ex. D-5.  Her monthly expenses totaled $1,825.59, yielding excess income of $41.41.  There is no contribution reported from her daughter, and no student loan payment.  Also included as an expense is this item: "catching up on mortgage."  Ex. D-6.[2]

---

[2]This probably refers to the debtor's concession, mentioned below, that she is at least two months delinquent in post-bankruptcy mortgage payments.

B.


The latest amended plan for which the debtor seeks confirmation contains

the following terms:

### AMENDED CHAPTER 13 PLAN OF THE DEBTOR

1. If the Debtor's estate were liquidated under Chapter 7 of the
Bankruptcy Code, unsecured creditors would not receive any
payments. Those creditors will not receive less under the
terms of this plan.

2. The Debtor shall submit to the supervision and control of
the Trustee payments in the amount of $40 monthly for the
first 27 months of the plan, through April, 2007, and, if she is
unsuccessful in challenging the claims of the Pennsylvania
Department of Revenue ("PADOR") and in eliminating the
mortgage arrears claimed by the holder of her first mortgage,
which is serviced by GMAC Mortgage Corp. and owned by J
P Morgan Chase Bank (collectively, "Bank") in the
proceeding described below as of that date, she will increase
her payments to the amount of $270/month for the final 33
months of the plan, beginning in May, 2007. The Debtor will
receive her associate degree from the Community College of
Philadelphia shortly and anticipates that this degree will result
in increased income by a year from the present, which will
permit her to make the increased payments.

3. The Debtor has filed an adversary proceeding to enforce
her right to rescind the alleged first mortgage against her
residence at 3 Linden Terrace, Philadelphia, PA. 1944 ("the
Home") held by Bank. Although she will make her regular
post-petition mortgage payments to Bank to protect her
interests in the Home in any event because a contingency
exists that the proceeding may not be entirely successful, she
anticipates that her claims against Bank will eliminate all of
the arrears otherwise owed to this creditor. If she is not
successful in eliminating the arrears in arrears [sic] as of May,
2007, then she will commence payments towards the arrears
owe [sic] to Bank through her Trustee payments.

4. The various claims of the Debtor's creditors are classified
in this Plan as follows:

A. Class One: Administrative claims. This claim will consist of unpaid attorneys' fees of $1394, an alleged priority claim of PADOR of $1473.70, and the Trustee's fees.

B. Class Two: The claim of Bank. This claim shall be dealt with as described in paragraph 3 of the plan.

C. Class Three: The secured tax claims of the School District and City of Philadelphia for real estate taxes or any municipal claim. These claims shall be paid pursuant to arrangements with the creditors in issue directly, outside of the plan.

D. Class Four: All other claims against the Debtor that are timely filed and ultimately allowed.

5. The payments received by the Trustee from the Debtor shall be distributed first to allowed Class One claimants until they are paid in full; and secondly, to Class Four claimants pro rata.

6. Upon application, the Debtor may alter the amount and timing of payments under this plan.

7. Upon completion of this or any other duly confirmed plan, all other debts listed in the Debtor's schedules or provided for by this Plan which are dischargeable shall be discharged.

Ex. D-1.

In addition to this amended plan, the debtor's plan "addendum"[3] contains

these terms:

---

[3] The Bankruptcy Code permits chapter 13 plans to be "modified" before confirmation, 11 U.S.C. § 1323, and (in limited circumstances) after confirmation. 11 U.S.C. § 1329. Local Bankr. R. 3015-2(a)(3) generally provides creditors and the trustee with 25 days notice of chapter 13 plan amendments prior to the confirmation hearing. Labeling an amendment an "addendum" does not obviate this requirement. However, no party has complained of a lack of notice, and the confirmation hearing continued over a portion of three days so no prejudice resulted.

### ADDENDUM TO AMENDED CHAPTER 13 PLAN OF THE DEBTOR

Paragraph 2 of the Amended Chapter 13 Plan of the Debtor is revised to read as follows:

2. The Debtor shall submit to the supervision and control of the Trustee payments in the amount of $40 monthly for the first 27 months of the plan, through April, 2007. If she is successful in challenging the priority claim of the Pennsylvania Department of Revenue ("PADOR") and in eliminating or reducing the mortgage arrears claimed by the holder of her first mortgage, which is serviced by GMAC Mortgage Corp. and owned by J P Morgan Chase Bank (collectively, "Bank") in the proceeding described below as of April, 2007, she will make 11 additional payments of $40 monthly, through March, 2008. However, if she is unsuccessful in challenging the priority claims of the Pennsylvania Department of Revenue ("PADOR") and in eliminating the mortgage arrears claimed by the holder of her first mortgage, which is serviced by GMAC Mortgage Corp. and owned by J P Morgan Chase Bank (collectively, "Bank") in the proceeding described below as of April, 2007, she will increase her payments to the amount necessary to pay those claims, which may require payments of as much as $270/month for the final 33 months of the plan, beginning in May, 2007, and which she will make if necesary [sic].  The Debtor believes that, if necessary, she will be able to make these additional payments because she will receive her associate degree from the Community College of Philadelphia in May, 2006, and anticipates that this degree will result in her being able to obtain employment which will result in increased income by May, 2007, which will permit her to make the increased payments.

Ex. D-2.

Taken together, the debtor seeks confirmation of a plan that proposes payments of $40 per month for 27 months, or a total of $1,080 until May 2007.  In one circumstance—if the debtor eliminates the priority portion of the claim filed by the

Commonwealth of Pennsylvania[4] and eliminates or reduces the mortgage arrearage held

by JP Morgan Chase—then she proposes to pay an additional $40 per month for 11

additional months, through March 2008.  This would total $1,520.  If she is unable to

eliminate the Commonwealth's priority claim and JP Morgan Chase's mortgage arrearage

claim, "she will increase her payments to the amount necessary to pay those claims, which

may require payments of as much as $270/month for the final 33 months of the plan,

beginning in May, 2007."  Ex. D-2.

 The mortgage arrearage claimed by JP Morgan Chase was $6,293.79.  The

priority claim asserted by the Commonwealth was $1,473.70.  In addition, in paragraph 4

of the amended plan, the debtor provides for a priority claim to her attorney in the amount

of $1,394.  Together, they total $9,161.49.  If one adds a trustee commission of 7%, and

assumes no payments to unsecured creditors, the debtor would be obligated to pay

$9,851.06 in her second contingency.  The debtor's plan, were she to pay $270 for 33

months, would yield a total payment of $9,990.[5]

---

 [4]The Commonwealth filed a proof of claim for unpaid income taxes for the years
2002 and 2003.  This claim, docketed as claim #2, asserts a priority under section 507(a)(8) in
the amount of $1,473.70, and a general unsecured claim in the amount of $350.  A chapter 13
plan must provide in full for all priority claims unless the creditor agrees otherwise.  11 U.S.C. §
1322(a)(2).

 [5]Given the language of section 1322(a)(2) when compared with section
1129(a)(9), courts have held that priority creditors in chapter 13 cases are not entitled to post-
confirmation interest.  See 8 Collier on Bankruptcy, ¶ 1322.03[4] (15th ed. rev. 2005) (and cases
cited).  Furthermore, because this mortgage debt arose in 2002, it is generally agreed the
postpetition interest on the arrearage claim, compulsory after Rake v. Wade, 508 U.S. 464
(1993), is not required in light of the 1994 passage of section 1322(e).  See id., ¶ 1322.09[4][b]
(citing Pub. L. No. 103-394, § 702(b)(2)(D)).  Postpetition interest in favor of JP Morgan Chase
would be required on its arrearage claim, however, if Pennsylvania law and the mortgage
agreement so provided.  There was no evidence of such entitlement.
 Therefore, for purposes of this confirmation hearing, I accept the debtor's implicit
(continued...)

C.


The debtor testified that she is current in her $40 per month trustee payments. She is, however, at least two months delinquent in her post-bankruptcy mortgage payments of $492.59 per month. In order to support her position that she can afford to meet her proposed plan obligations, the debtor testified at the confirmation hearing that she recently graduated from a community college and just became a part-time employee earning $20,000 per year. See Ex. D-7. This position is subject to review in six months. If the debtor performs her duties well, she hopes to be offered a full-time position earning $40,000. The debtor also plans to attend evening college next fall. She believes that if she attends evening classes, her student loan repayment obligation will be deferred.

The debtor is now estranged from her husband. Mr. King testified that he has an "understanding" with the debtor whereby he will pay her $500 per month in support. He only earns about $1,000 per month working as a housekeeper at a community health center. Moreover, he has a daughter aged 17, who has a child. The Pennsylvania Department of Public Welfare has sued him for child support with a court hearing to take place in July 2006.

Finally, the debtor testified that she did not receive numerous loan closing documents when she entered into a mortgage loan transaction in 2002. She asserted that the documents were later mailed to her home. Her testimony was unclear, however, when

---

[5](...continued)
assumption that she need not provide for interest in favor of the Commonwealth's priority claim and the mortgagee's arrearage claim.

she sought to explain what she did or did not receive and when.  The mortgagee called the

loan closing officer as a witness, and he did not recall meeting with the debtor or the loan

transaction itself.  The loan closing occurred years ago and was one of hundreds with

which he was involved.  He did testify, however, that he routinely provided copies of loan

closing documents to borrowers and was not aware of mailing any documents to the

debtor.  The debtor's testimony on this point was confused; the loan closing officer came

across in his testimony as competent.

II.

A.

At the outset, I note that the debtor has the burden of persuasion to establish

that her proposed chapter 13 plan meets all of the requirements of 11 U.S.C. §§ 1322 and

1325.  In re Heath, 182 B.R. 557, 560 (B.A.P. 9th Cir. 1995) ("In general, the debtor

carries the burden of proving, by a preponderance of the evidence, that the plan complies

with the statutory requirements of confirmation."); In re Weisser, 190 B.R. 453, 454

(Bankr. M.D. Fla. 1995); see also In re Ziegler, 88 B.R. 67, 69 (Bankr. E.D. Pa. 1988)

(Twardowski, B.J.).  Among the confirmation requirements are those found in subsection

1325(a)(6)–that the debtor's plan be feasible.  Section 1325(a)(6) requires that visionary

or speculative chapter 13 plans not be approved.

The feasibility requirement has been analyzed in the following terms:

> To satisfy feasibility, a debtor's plan must have a reasonable
> likelihood of success, i.e., that it is likely that the debtor will

11

have the necessary resources to make all payments as directed
by the plan.  11 U.S.C. § 1325(a)(6).  The debtor carries the
initial burden of showing that the plan is feasible.  Before
confirmation, the bankruptcy court should be satisfied that the
debtor has the present as well as the future financial capacity
to comply with the terms of the plan.

In re Fantasia, 211 B.R. 420, 423  (B.A.P. 1st Cir. 1997) (citations omitted); see In re

Scott, 188 F.3d 509 (table), 1999 WL 644380, at *1 (6th Cir. 1999); In re Harris, 199

B.R. 434, 436 (Bankr. D.N.H. 1996) (feasibility requires that the proposed chapter 13

plan have a likelihood of success).[6]

Typically, a chapter 13 debtor meets her burden of demonstrating the

viability of a chapter 13 plan based upon future income by showing a stable employment

history, present employment, and a current income level sufficient to make proposed plan

payments.  See, e.g., In re Nottingham, 228 B.R. 316, 321 (Bankr. M.D. Fla. 1998).  A

few courts, however, have found a chapter 13 plan feasible when the debtor is presently

unemployed but has demonstrated a sufficient likelihood of re-employment.  See, e.g., In

re Compton, 88 B.R. 166, 167 (Bankr. S.D. Ohio 1988); In re Van Gordon, 69 B.R. 545,

547 (Bankr. D. Mont. 1987) (the plan was found feasible because "the evidence of the

Debtor is that his employment prospects after termination of his present job are good, and

will provide him with the same level of income he has received in the past").

---

[6]A similar feasibility provision is found in chapter 11 cases at 11 U.S.C. §
1129(a)(11).  Courts have noted that the purpose of the chapter 11 feasibility requirement is to
prevent confirmation of "visionary schemes."  See Matter of Pizza of Hawaii, Inc., 761 F.2d
1374, 1382 (9th Cir. 1985); 7 Collier on Bankruptcy, ¶ 1129.03[11] (15th ed. rev. 2005).  While
feasibility does not require that compliance with plan terms be guaranteed, there must be a
"reasonable prospect of success" and the plan must be "workable."  7 Collier on Bankruptcy, ¶
1129.03[11], at 1129-74 to 75.

Compare In re Anderson, 21 B.R. 443 (Bankr. N.D. Ga. 1981) (unemployed debtor was unable to show he could supply regular and stable income).

Similarly, if a chapter 13 debtor is self-employed, the feasibility of her proposed plan will be based upon her earnings history (preferably demonstrated by federal tax returns), her current income and the likely stability of that income in the future.  If she has no such income at the time of the confirmation hearing, the debtor has the burden to demonstrate a sufficient likelihood that adequate self-employment income is imminent.

In addition, the failure of a chapter 13 debtor to propose a plan that addresses likely future contingencies has resulted in a denial of confirmation, based upon a lack of feasibility.  See, e.g., In re Goodavage, 41 B.R. 742 (Bankr. E.D. Va. 1984) (failure to provide for likely medical expenses); In re Jones, 10 B.R. 128 (Bankr. E.D. Va. 1981) (confirmation is denied where the court found a budget unrealistic for not including amounts for home maintenance or automobile insurance, and little for recreation or food and clothing); In re Hockaday, 3 B.R. 254 (Bankr. S.D. Cal. 1980) (confirmation is denied where the debtor only budgeted $10 for emergencies); see also In re Smith, 207 B.R. 888, 890 (B.A.P. 9th Cir. 1996) ("In cases where the debtors have very young or handicapped dependents, the absence of a budget for life insurance may call a Chapter 13 plan into question.").

When litigation is pending at the time of the confirmation hearing, the likely outcome of that litigation may be considered as part of the debtor's burden to establish the feasibility of her plan.  See In re Yeager, 2004 WL 422049, at *3 (Bankr. E.D. Pa. 2004); see also In re Shields, 148 B.R. 783 (Bankr. E.D. Pa. 1993) (chapter 13 plan that is

premised upon the debtor's setting aside of a foreclosure sale is not feasible when there is

no likelihood that the foreclosure sale will be set aside); see generally In re Bell, 314 B.R.

54, 61 n.5 (Bankr. E.D. Pa. 2004) (determination of confirmation should not be delayed

by pendency of an adversary proceeding).


B.


The trustee's sole basis for this objection is 11 U.S.C. § 1325(b) of the

Bankruptcy Code, referred to as the "disposable income test." This statutory provision,

adopted in 1984, was added, in part, to address chapter 13 cases in which debtors may

have limited non-exempt assets but measurable disposable income. See 2 Bankruptcy, §

9-13 (Epstein, et. al, 1993).

Section 1325(b) provides:

 (1)  If the trustee or the holder of an allowed unsecured claim
objects to the confirmation of the plan, then the court may not
approve the plan unless, as of the effective date of the plan–

(A) the value of the property to be distributed under the
plan on account of such claim is not less than the
amount of such claim; or

(B) the plan provides that all of the debtor's projected
disposable income to be received in the three-year
period beginning on the date that the first payment is
due under the plan will be applied to make payments
under the plan.

 (2)  For purposes of this subsection, "disposable income"
means income which is received by the debtor and which is
not reasonably necessary to be expended–

(A) for the maintenance or support of the debtor or a
dependent of the debtor including charitable

14

> contributions (that meet the definition of "charitable
> contribution" under section 548(d)(3)) to a qualified
> religious or charitable entity or organization (as that
> term is defined in section 548(d)(4)) in an amount not
> to exceed 15 percent of the gross income of the debtor
> for the year in which the contributions are made; and
>
> (B) if the debtor is engaged in business, for the
> payment of expenditures necessary for the
> continuation, preservation, and operation of such
> business.

In general, when a chapter 13 debtor proposes a reorganization plan that

does not call for payment in full to her unsecured creditors—as occurs in this case, indeed

her plan calls for virtually no payments to unsecured creditors—her plan may not be

confirmed over the objection of an unsecured creditor or the chapter 13 trustee unless the

debtor's proposed plan calls for payment of all "disposable income" for a three year

period:

> Because the trustee has objected to the Debtors' plans and the
> plans would not repay the unsecured creditors in full, the
> plans can be confirmed only under § 1325(b)(1)(B), requiring
> all of the debtors' projected disposable income to be applied
> to unsecured debts for three years. Disposable income, for
> individuals not engaged in business such as Anes and the
> Tierney's, is that income "not reasonably necessary to be
> expended for the maintenance or support of the debtor or a
> dependent of the debtor. . . ." Id. § 1325(b)(2)(A).

In re Anes, 195 F.3d 177, 180 (3d Cir. 1999); see In re Freeman, 86 F.3d 478 (6th Cir.

1996); In re Solomon, 67 F.3d 1128 (4th Cir. 1995).[7]

---

[7]While other provisions of section 1322 and 1325 dictate minimum requirements
for treatment of secured, priority and unsecured creditors, the disposable income test places a
floor below which a chapter 13 debtor cannot go in proposing a reorganization plan.  Thus, the
disposable income test may require payments greater than the minimum permitted by other
provisions. The feasibility test, in turn, places a practical ceiling upon any viable proposal.  If this
ceiling is below the minimum requirements, confirmation will be denied.  Thus, the

(continued...)

As noted above, the debtor has the ultimate burden of persuasion that her proposed chapter 13 plan meets the statutory requirements for confirmation.  See, e.g., In re Hill, 268 B.R. 548, 552 (B.A.P. 9th Cir. 2001) ("The debtor, as the chapter 13 plan proponent, has the burden of proof on all elements of plan confirmation."); In re Norwood, 178 B.R. 683, 687 (Bankr. E.D. Pa. 1995).  While this burden is lessened when the chapter 13 trustee recommends confirmation, see In re Hines, 723 F.2d 333 (3d Cir. 1983), the trustee has made no such recommendation in this instance.   Where an objection to confirmation is raised under section 1325(b), the initial burden of production falls on the objecting trustee or unsecured creditor to show that the debtor is not applying all of her disposable income to the plan for three years.  See, e.g., In re Andreacchio, 2004 WL 2495409, at *2 (Bankr. E.D. Pa. 2004); In re McGilberry, 298 B.R. 258, 260 (Bankr. M.D. Pa. 2003).  If that initial burden is satisfied, then the debtor bears the burden of persuasion on the question of disposable income.  In re Andreacchio, 2004 WL 2495409, at *2-*3; see also In re Heath, 182 B.R. at 561 (objector has an initial burden of production before the debtor has the ultimate burden of persuasion).

As the statute instructs, disposable income refers to "income . . . not reasonably necessary . . . for the maintenance or support of the debtor or a dependent of the debtor. . . ."  11 U.S.C. § 1325(b)(2)(A).  Accordingly, it is a function of the debtor's income as well as her reasonable monthly living expenses.

> This determination [of disposable income] is a two step
> process.  First, the court must project the debtor's income
> over the next three years. . . . As a practical matter, unless
> there are changes [in projected income] which can be clearly

---

[7](...continued)
reorganization requirements in chapter 13 establish a delicate balance.

16

foreseen, the court must simply multiply the debtor's current
monthly income by 36 and determine whether the amount to
be paid under the plan equals or exceeds that amount.  Section
1329(a) [dealing with post-confirmation plan modifications]
provides a mechanism to deal with any unforeseen changes in
the debtor's income situation. . . .

8 <u>Collier on Bankruptcy</u>, ¶ 1325.08[4][a], at 1325-50.10 (15th ed. rev. 2005) (footnotes

omitted); <u>see</u> <u>In re Anderson</u>, 21 F.3d 355 (9th Cir. 1994).

Once the chapter 13 debtor's income over the 36-month period is

determined, "[e]xpenses 'reasonably necessary . . . for the maintenance or support of a

debtor or a dependent' are deducted from the debtor's gross income to determine the

debtor's 'projected disposable income.'"  5 <u>Norton Bankruptcy Law and Practice 2d</u> §

122:10 at 122-101 (2004) (footnote omitted).

III.

A.

The feasibility of the debtor's plan proposal in this contested matter, calling

for future payments of $270 per month, is premised upon her obtaining an increase in

income from employment within six months of May 2006, or by November 2006.  That

is, according to her testimony, when her probationary part-time employment period ends

and she is eligible to become engaged full-time, the debtor projects a salary increase from

17

$20,000 to $40,000. This salary increase is the source of any needed additional plan

funding. But her proposed amended plan does not require any increase in monthly

payments from $40 to as much as $270 until May 2007; moreover, such additional

payments would only be distributed to secured creditor JP Morgan Chase and not to any

unsecured creditors.

Thus, the trustee complains that if such increase in income is likely, and if

these larger plan payments are not needed to repay the debtor's mortgagee, as she also

asserts, then the debtor must be obligated by section 1325(b) to provide such additional

payments for the benefit of unsecured creditors. In other words, the trustee insists that

any plan proposed by the debtor must require her to pay in at least the $270 per month

derived from her projected increased income, as this projected income and the plan

provisions arise within the 36 month period covered by section 1325(b).

Given the debtor's contention that her increased income is likely, and thus

her plan is feasible, she does not challenge the trustee's analysis under section 1325(b).[8]

Instead, she argues that her proposed amended plan should be confirmed, but when she

obtains full-time employment, and if she is successful in eliminating JP Morgan Chase's

---

[8]Indeed, the trustee's objection may be unduly generous to the debtor. If her
income were to increase by $20,000 per annum or $1,667 per month gross, then her disposable
income is likely to far exceed $270 per month. Indeed, the debtor mentions in her supporting
memorandum, at 7, that her monthly net income would increase by $1,300. Even if her expenses
were to increase due to full-time employment, such an escalation in salary likely would yield
more than an additional $230 in income available to pay creditors.

secured claim, the debtor contends that the trustee can seek at that time to modify her

confirmed plan under section 1329(a).  I find this suggestion unpersuasive.

There is no Third Circuit or Supreme Court interpretation of section

1329(a).  There are a number of non-binding decisions, however, that restrict the ability

of a trustee or unsecured creditor to obtain a post-confirmation modification of a chapter

13 plan to unanticipated changes in the debtor's income or expenses.  See, e.g., In re

Arnold, 869 F.2d 240, 243 (4th Cir. 1989) (res judicata will prevent the post-confirmation

modification of a chapter 13 plan "where there have been no unanticipated, substantial

changes in the debtor's financial situation"); In re Furgeson, 263 B.R. 28, 36-37 (Bankr.

N.D.N.Y. 2001); In re Trumbas, 245 B.R. 764, 767 (Bankr. D. Mass. 2000).  This

position was recently enunciated by my colleague, Chief Judge Sigmund, in In re Nevins,

2005 WL 984182, at *3 (Bankr. E.D. Pa. 2005):

> Courts have generally recognized the appropriateness of
> granting the request of a trustee or creditor to increase
> distribution under a confirmed plan when a change in the
> debtor's financial situation is substantial and the magnitude of
> the change could not have reasonably been anticipated at the
> time of confirmation by the party seeking modification.

See also 8 Collier on Bankruptcy, ¶ 1329.03, at 1329-7 (15th ed. rev. 2006).

It would be extremely difficult to contend in this instance that the debtor's

increased employment income was unforseen or unanticipated at confirmation, as such

income would be the basis for a determination of plan feasibility.  Therefore, the debtor's

suggestion—that the trustee's ability to seek post-confirmation modification in the event

this debtor obtains full-time employment within the next six months renders her current

plan proposal as viable—is problematic.

Accordingly, to the extent that the debtor's proposed amended plan is

feasible and requires substantially increased monthly payments, it cannot be confirmed as

it would not meet the disposable income test.  And, to the extent that the plan is not

feasible—that is, if the debtor has little likelihood of obtaining increased income—then

confirmation should also be denied.  See, e.g., In re Scott, 1999 WL 644380, at *1

("Without a credible basis to find that he could pay the $100 per month that his plan

required, the plan could not be confirmed."); In re Cherry, 84 B.R. 134, 139 (Bankr. N.D.

Ill. 1988); In re McGowan, 9 B.R. 329, 330 (Bankr. E.D. Pa. 1981) ("Since the debtors

have offered no evidence to show that they will be able to obtain the necessary

refinancing, we conclude that it does not appear that they will be able to fund the plan as

proposed"); In re Gale, 8 B.R. 960, 962-63 (Bankr. D. Md. 1981) (confirmation of

chapter 13 plan is denied because future plan payments were "conjectural at best.").


B.


One reaches the same result—denial of confirmation—if I assume that the

debtor's income were not to increase within six months but she were successful in her

loan rescission litigation against mortgagee JP Morgan Chase Bank.  The debtor suggests

20

that even if her disposable income were not to exceed $40, she may not need to increase

her plan payments in light of her Truth-in-Lending claim against her secured creditor.

This suggestion is unpersuasive for three reasons.[9]

First, having heard the debtor's testimony regarding loan documents

received or not received at the loan closing, and having heard from the loan closing clerk,

I conclude it unlikely that she will be able to rebut the statutory presumption of receipt of

all required documents.  Her testimony on this issue at confirmation was too confused

and, at certain points, contradictory to be persuasive.  To the extent the debtor intends to

rely upon such testimony during the adversary proceeding (and assuming that the Third

Circuit holds that an averment of such testimony is sufficient to defeat a creditor's

summary judgment motion), I cannot now conclude that rescission of the mortgage is

likely.  Therefore, if she intends to confirm a plan that provides for the mortgagee's claim

by rescinding it, her evidence is insufficient to demonstrate confirmation feasibility.

Second, the debtor conceded at the confirmation hearing that even if a loan

is rescinded pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23(d), most courts have

granted the secured creditor a rescission claim that will require the debtor to repay the

loan principal, less payments received.  See In re Daniels, Bankr. No. 04-11496, slip. op.,

_____

[9]Given the debtor's current reliance upon voluntary monthly contributions from
her estranged husband, given his extremely modest income and possible future support obligation
in favor of his daughter, and given her post-bankruptcy mortgage delinquency, the feasibility of
the debtor's proposed plan—calling for post-bankruptcy mortgage payments to JP Morgan Chase
pending the outcome of her adversary proceeding—is also doubtful.

21

at 6-7, http://www.paeb. uscourts.gov/pages/pubopins (Raslavich, B.J.); Quenzer v.

Advanta Mortgage Corp. USA, 288 B.R. 884, 888-89 (D. Kan. 2003).  Courts may differ

regarding whether rescission by the chapter 13 debtor must be conditioned upon the

debtor's immediate tender of the entire outstanding principal amount—Judge Raslavich

has held that a tender is required, see In re Daniels, slip op., at 6-7, while Chief Judge

Sigmund has permitted this sum to be repaid over the life of the proposed plan.  In re

Williams, 291 B.R. 636 (Bankr. E.D. Pa. 2003).  But courts do require that the chapter 13

debtor repay the outstanding principal amount, which is consistent with the common law

notions of rescission.

If the loan were rescinded, the debtor would be unable to cure the missed

loan payments under section 1322(b)(5) (as there would be no mortgage loan to cure), and

would be forced to repay the outstanding loan principal in full over the life of the plan.

This would necessitate payments from this debtor far beyond $40 per month.  Thus, even

rescission would not make viable a $40 per month plan in these circumstances.[10]

---

[10]The debtor argues that a bankruptcy court can exercise equitable powers under
15 U.S.C. § 1635(b) and fix the borrower's repayment terms of the loan principal upon
rescission, choosing any length, monthly payment and interest rate, irrespective of the length of
the chapter 13 plan.  In so contending, she cites to In re Bell, 314 B.R. at 61-62.  Judge Carey
explained in Bell, however, that he mistakenly allowed the confirmation process to be delayed
until the TILA adversary proceeding was resolved, which took so long that it left the chapter 13
debtor in that case very little time to repay the loan principal after confirmation and over the life
of the chapter 13 case.

The debtor does not cite and I am unaware of any other decision allowing a
chapter 13 debtor to repay the rescission amount due the creditor beyond the length of the chapter
13 plan.  And as the confirmation process is not being postponed in this instance to await the
outcome of the debtor's adversary proceeding, the circumstances faced by the court in Bell do not
(continued...)

22

Third, if the mortgage loan were rescinded, and if that were to result in JP

Morgan holding only an unsecured claim against the debtor for the principal balance of

the loan, the only lien against the debtor's realty would be held by the City of

Philadelphia in the amount of $2,326.94.  Claims Docket, #5.  The debtor valued her

home at $60,000.  Therefore, there would be more than $57,000 in equity in the property;

far more than any individual may exempt under section 522(d).

The confirmation requirement found in section 1325(a)(4) is referred to as

the "best interest of creditors test."  In essence, a chapter 13 plan must provide unsecured

creditors with a dividend at least equal to what those creditors would receive in a chapter

7 liquidation.  See generally In re Solomon, 67 F.3d 1128, 1132 (4th Cir. 1995); In re

Nevins, 2005 WL 984182, at *4 (Bankr. E.D. Pa. 2005).  Under the best interest of

creditors test, unsecured creditors would be entitled to receive a distribution equal in

amount to the non-exempt equity.  Accordingly, even if the debtor were able to eliminate

the mortgagee's security interest, it would require the debtor to significantly increase her

plan payments far beyond $40 per month in favor of unsecured creditors.  See In re Wile,

304 B.R. 198, 204 (Bankr. E.D. Pa. 2004).

_____

[10](...continued)
arise.

The debtor also asserts in her post-hearing memorandum, at 9, that she has already
repaid more than $21,000 to JP Morgan Chase, which would significantly reduce her rescission
obligation.  I do not believe the evidentiary record made reflects this figure, nor would it allow
me to opine as to her rescission liability.  For purposes of this contested matter, I only conclude
that this liability is likely to require much more than plan payments of $40 per month.

IV.

In conclusion, the debtor's proposed amended chapter 13 plan, even though structured in the alternative and premised on the possibility of increased employment income, cannot be confirmed.  The evidence presented does not meet the debtor's burden of demonstrating that the delicate balance established by the numerous confirmation requirements of sections 1322 and 1325 have been met.

Therefore, an order shall be entered sustaining the objections to confirmation.  As the debtor requested leave to file an amended plan, she shall be given one final opportunity to propose a viable plan.  If she is unable to do so within the time-frame outlined in the accompanying order, this case shall be dismissed under section 1307(c).

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                      :    Chapter 13

PAMELA SCOTT-GAGE                          :

        Debtor                             :    Bankruptcy No. 05-10069F

.................................................

### ORDER

.................................................

AND NOW, this 7th day of July 2006, for the reasons stated in the

accompanying memorandum, it is hereby ordered that the objections to confirmation filed

by the chapter 13 trustee and JP Morgan Chase Bank are sustained and confirmation of

the debtor's proposed amended plan, with addendum, is denied.

        The debtor is granted leave to file and serve upon all interested parties a

final amended plan on or before July 21, 2006.   With service of this plan, the debtor shall

inform all interested parties that objections to confirmation shall be filed and served on or

before August 4, 2006.  A confirmation hearing shall take place on August 15, 2006, at

3:00 p.m. in Bankruptcy Courtroom #2.


_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Ms. Pamela Scott-Gage
3 Linden Terrace
Philadelphia, PA 19144

David A. Scholl, Esq.
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St Albans Avenue
Newtown Square, PA 19073

William C. Miller, Esq.
Chapter 13 Trustee
111 S. Independence Mall, Suite 583
Philadelphia, PA 19106

Andrew Spivack, Esq.
Phelan Hallinan & Schmieg, LLP
One Penn Center at Suburban Station
16 & JFK Blvd, Suite 1400
Philadelphia, PA 19103

B.Townsend, Courtroom Deputy